THE ELLSWORTH, McPHERSON, NEWTON & SOUTHEASTERN
RAILROAD COMPANY v. SAMUEL GATES.

1. HOMESTEAD —*Railroad Right-of-Way—Damages, Measure of.* A set-
tler upon public lands who has made a valid homestead entry, and
is in possession perfecting his title, is entitled to full value for all
injury done to his possession, where a part of such homestead has
been condemned for a right-of-way for a railroad; and the measure
of his damage differs only in degree from that sustained by one for
the same cause who has a perfect title.

2. ———— *Erroneous Instruction.* On a trial upon an appeal from an
award of damages by a homesteader, it is error for the court to give
the jury the same rule of measure of damages as would be proper to
give, provided the homesteader had a perfect title to the land.

*Error from Harvey District Court.*

THE defendant in error was, on or about the 15th day of
June, 1885, and at the time the plaintiff in error constructed
its line of railroad across his land, a homesteader and the
equitable owner of the following-described lands in Harvey
county: the southeast quarter of section 6, township 24, range
2, east of the sixth principal meridian. The defendant in
error had only a homestead filing thereon, together with cer-
tain homestead improvements. These facts, together with
the taking of a strip one hundred feet wide by the railroad
company, the condemnation of the commissioners duly ap-
pointed by the court, and the subsequent appeal to the dis-
trict court, are all conceded by the parties as facts. The case
was tried at the October term, 1886, of the district court,
and the jury returned a general verdict in favor of the plain-
tiff below for $765.14, together with special findings. So
much of the special findings and instructions of the court as
we deem sufficient are as follows:

"7. Was not a homestead filing put upon the land by
plaintiff in September, 1883, his only title to the premises at
the time defendant's railroad was located through the same?
A. Yes."

"9. Has the plaintiff yet procured any title to the lands

from the government of the United States, and if so, what is the nature and extent thereof? A. No."

"14. What was the value of the tract of land in question in the market immediately before defendant's right-of-way was located through it? A. Deciding according to the instructions of the court, we find it worth about $4,000.

"15. What was the value of the tract of land in question in the market immediately after defendant's right-of-way was located through it, considering the manner in which it is cut and the road was operated? A. Deciding according to instructions of the court, we find it worth about $3,300."

### INSTRUCTIONS.

"1. This is an appeal by the plaintiff from the award of damages by commissioners in proceedings for the condemnation of a right-of-way for the defendant through a quarter-section in Harvey county, of which the plaintiff is in possession by virtue of a homestead entry under the laws of the United States.

"2. It is admitted that a right-of-way over the land in question was appropriated by the defendant, and it is not disputed that the plaintiff was and is occupying the land in question under and by virtue of homestead entry of said land.

"3. The jury are instructed that under and by virtue of said homestead right the plaintiff is entitled to have awarded to him in this proceeding the full amount of damages done to the land, as shown by the evidence, under the rules for estimating damages as laid down in these instructions; and you are instructed that although plaintiff's homestead did not, at the time of the appropriation of defendant's right-of-way, have any market value of its own by reason of not being a subject of sale, yet the jury may use as a measure of value just such a tract of land which could have been placed on the market and sold.

"4. The measure of damages in this case is the difference between the market value of just such a tract of land, as to quality, improvements, and situation, as that in question just before the appropriation of the right-of-way; that is, without a railroad running through it, and immediately after such appropriation."

"7. The difference between market values before and after the appropriation, according to the view of this case to be taken by you, is caused, first, by the actual taking of the part appropriated, and second, by the damage done to the remainder of the tract by the appropriation and use for a railroad right-of-way of the part taken."

"9. The real question to be determined by the jury is, how much less would such a piece of land, in quality, situation, and everything, have brought in the market, diminished in quantity and in the condition in which this was left by the railroad, have brought in the market than just before it was cut by the railroad."

The *Railroad Company* complains of these instructions, and brings the case here for review.

*J. H. Richards*, for plaintiff in error; *Ady & Nicholson*, of counsel.

*Clarence Spooner*, for defendant in error; *Greene & Shaver*, and *Peters, Lathy & Holliday*, of counsel.

Opinion by CLOGSTON, C.: The conceded facts, the charge of the court to the jury, and the findings of the jury, present but one question, and that is, did the court in its instructions to the jury give the proper rule or measure of damages which the appellant was entitled to recover? This question has been recently settled in an exhaustive opinion in the case of *Railroad Co. v. Johnson*, 38 Kas. 142, in which it is held that a different rule must be given if the occupant of the land condemned for right-of-way by a railroad company has only a homestead right and not the fee to the land; or, in other words, the jury must take into consideration the title so possessed, and the right of possession, in determining the extent of the damages and value of the land. In that case, Mr. Justice JOHNSTON, speaking for the court, says:

"The interest which the settler has may be appropriated for a right-of-way by adversary proceedings, as we have already, seen that congress has provided for the condemnation of a right-of-way through a homestead, as well as for its purchase from the settler. Of course the settler does not part with the same interest or value that he would if he had the legal title, and he should only receive compensation for the interest taken from him. The court below, however, in its charge and rulings on the admission of testimony, seems to have carefully restricted the jury to an allowance for the injury done to the rights and interest which the settler had in the land. The

appropriation and use of a strip of land through the homestead affected the entire tract. The homesteader had taken and was using it as a single tract, and as his home and farm. The division of the farm into parts of irregular shape, the deep cuts and high fills that were made, and the inconvenience resulting from the construction of the road, constitute an injury to the interest of the settler which differs only in degree from that sustained by one who has the legal title."

In this case the court instructed the jury and gave the rule for the measure of damages just as it would have given it had the plaintiff, instead of having a homestead right, owned the fee. This was error. The court ought to have defined the rights of the settler in such homestead, and left the question to the jury to determine his interest and from such interest the liability of the company. Just what that interest would be is a question of fact in each case, to be determined by the jury, and depends upon the improved condition and the length of time the homestead has existed, and all other facts that go to make up its value. Its value may be much less than if the settler owned the fee of the land, or it may be substantially the same, or a little less than its actual value including the fee.

We are therefore of the opinion that the instructions of the court are erroneous, and recommend that the cause be reversed, and a new trial ordered.

By the Court: It is so ordered.

All the Justices concurring.